UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ex rel. BRADLEY STEPHENS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Cause No.: 2:12-CV-306<br>) |
| DR. ARSHAD MALIK, AFZAL J. MALIK, and PRIME HEALTH CARE SERVICES, INC., | )<br>)<br>) |
| Defendants. | )<br>) |

**OPINION AND ORDER**

This matter is before the Court on the Petition for Attorney Fees and Expenses and memorandum in support filed by Relator/Plaintiff Bradley Stephens (docket entries 107 and 108). Defendants Afzal Malik and Prime Health Care Services, Inc., filed a response to the petition (DE 113) and Stephens filed a reply (DE 114).[1] Shortly after Stephens filed his petition, Defendants moved to strike it as untimely. Defendants' Motion to Strike (DE 109). The Court (Magistrate Judge Paul R. Cherry) denied the motion (DE 112). Stephens then filed a Supplemental Petition for an Award of Attorney's Fees and Costs (DE 115) and a supplemental supporting memorandum (DE 116). The Defendants did not file a supplemental response and so this matter is ripe for resolution.

For the reasons discussed below, the Court GRANTS the Petition for Attorney Fees and Expenses (DE 107), GRANTS the Supplemental Petition for an Award of Attorney's Fees and

---

[1] All the substantive claims in this case have been settled, as discussed below. This fee litigation involves only Stephens and Defendants Afzal Malik and Prime Health Care Services. Defendant Dr. Arshad Malik already paid his portion of Plaintiff's fees and so is not a party to the present dispute.

Costs (DE 115), and awards the total sum $81,790.50. The Clerk of the Court is instructed to enter judgment in favor of Relator/Plaintiff Bradley Stephens, and against Defendants Afzal Malik and Prime Health Care Services, Inc., jointly and severally,[2] in the amount of $81,790.50, plus interest, at the prevailing legal rate, from April 29, 2016, until judgment is paid in full.

## DISCUSSION

Stephens filed this *qui tam* action on August 1, 2012, under the False Claims Act, 31 U.S.C. § 3729 *et seq*. Complaint (DE 1), p. 1. Stephens alleged that Defendant Arshad Malik, an Indiana physician, "violated the [FCA] by referring Medicare patients to Defendant Prime Health Care Services, Inc. (a company solely owned by his brother, Defendant Afzal J. Malik) which, in turn, billed Medicare for home health services in violation of the Stark Law, 42 U.S.C. § 1395nn(a)(1)-(2)." Petition for Attorney Fees, p. 1. The United States filed a Notice of Election to Intervene in Part and Decline in Part on March 24, 2014 (DE 17) and joined this action as a plaintiff. After nearly four years of litigation, the parties filed a joint Notice of Settlement on April 20, 2016 (DE 104). The court entered an Agreed Order of Dismissal on April 29, 2016, dismissing this case without prejudice and retaining jurisdiction (at the request of all parties) for purposes of enforcing the settlement agreement. Order of Dismissal (DE 15), p. 1. The enforcement of the settlement, at least as to plaintiff's counsel's fee award, is what brings this matter before the Court.

In his petition, Stephens states that because "settlement was reached resolving all False Claims Act claims between the Relator, the United States of America, and the Defendants[,] . . .

---

[2] Damages in False Claims Act cases are assessed jointly and severally against culpable defendants. *United States v. Hughes*, 585 F.2d 284, 286 (7th Cir. 1978). *See also*, *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 677 (4th Cir. 2015).

the Relator is now a prevailing party and, as such, is entitled to recover reasonable attorney fees and expenses attributable to the False Claims Act claims" asserted in this case. Petition for Attorney Fees, p. 1.[3] Stephens claims that "[w]hile an agreement was recently reached with Defendant Dr. Arshad Malik, all attempts to do so with Defendant Afzal J. Malik and Defendant Prime Health Care Services, Inc., via their common counsel, have been unsuccessful." *Id*., pp. 1-2. Stephens requests that "his counsel be paid attorney fees of $73,078.50 ($93,078.50 minus the $20,000.00 paid by Defendant Dr. Arshad Malik) and expenses of $2,497.00, plus interest from the April 29, 2016[,] settlement and dismissal of the *qui tam* allegations in this case." *Id*., p. 2.[4]

In their response brief, Afzal Malik and Prime Health Care challenge Stephens' fee petition first by renewing their argument that it "is time barred and it does not comply with trial

---

[3] The False Claims Act provides that a prevailing plaintiff/relator in a *qui tam* action is entitled to an award of "reasonable attorneys' fees and costs[]" (regardless of whether the United States intervenes in the case). 31 U.S.C. § 3730(c)(d)(1) and (2). The Act also provides that the prevailing plaintiff/relator "receive an amount for reasonable expenses necessarily incurred, . . ." in prosecuting the action and that "[a]ll such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(1).

[4] In his petition, Stephens also asks that his counsel "be paid the reasonable fees for time expended in drafting and litigating this Petition for Attorney Fees and Expenses." Petition, p. 2. He goes on to state that "[t]hough some of those hours and expenses have already been incurred and are thus part of this fee application, the total additional amounts cannot be ascertained until the litigation of this fee petition is completed. The Relator will itemize this time in his Reply memorandum, should it become necessary, or in a supplemental petition." *Id*., p. 2, n. 1. Stephens' footnote was apparently prophetic, given that the parties ended up litigating the Defendant's Motion to Strike (referenced above). This was the reason Stephens filed his supplemental petition (DE 115), i.e., to recover additional fees incurred in responding to (and ultimately defeating) the Defendants' motion and litigating this fee issue. *See* Memorandum in Support of Supplemental Petition (DE 116), p. 2. In his supplemental petition, Stephens asks the Court for "an additional award of . . . [$6,215.00] for time spent litigating his Fee Petition and for the preparation of" the filing of the supplemental petition and memorandum in support. *Id*. So, Stephens is asking for "total requested fees and costs for all work performed on the case" in the amount of $81,790.50, plus interest from the date of the settlement. *Id*.

3

rules and should be denied." Defendants' Response, p. 1. The Defendants don't expressly state that they are asking this Court to reconsider the Order entered by Magistrate Judge Cherry, in which he denied their motion to strike (which was based on this same argument), but clearly that's what they are requesting. The Court has considered the Defendants' arguments presented in their brief but declines the invitation to reconsider or reverse the Court's July 5, 2016, Opinion and Order.

Aside from their argument that his petition was untimely, the Defendants concede that Stephens is entitled to recover fees and costs. They do, however, raise challenges as to the amount. This argument is twofold. First, the Defendants contend that the "fee request should be decreased by $5,625.50 because the time requested to be reimbursed is unreasonable and would compensate the relator for attorney time not actually spent on this case." Defendants' Response, p. 2. Second, the Defendants argue that Stephens "requests to be reimbursed at an attorney rate that is not reasonable because it is not his attorney's actual rate [and] a credit of $7,937.50 should be given the Defendants [sic]." *Id.*, p. 3.

**I. Original fee petition.**

In his memorandum in support of his first petition for fees and costs, Stephens notes that "courts typically calculate attorney's fees in *qui tam* cases using the same standard as applied in 42 U.S.C. § 1988 civil rights actions and other matters involving federal statutes. This is commonly referred to as the 'lodestar method.'" Plaintiff's Memorandum, p. 2 (citations omitted). Stephens contends that his request for fees is based on a reasonable hourly rate and a reasonable number of hours of work, thereby providing a "reasonable lodestar" for Plaintiff's request. *Id.*, pp. 2-4. Stephens' counsel submitted a declaration in support of the fee petition that

summarizes his qualifications and expertise in cases like this, his work on this case, and his calculation of fees. Declaration of Travis W. Cohron (DE 108-1). Mr. Cohron also submitted a spreadsheet itemizing the fees and expenses incurred in this case. Plaintiff's Exh. (DE 108-2).

The Defendants' first argument for a decrease in the amount requested by Stephens is based on its brow raising contention that Stephens' fee petition contains "altered entries" and they attach what they claim is "a summary of those altered entries[.]" Defendants' Response, p. 2 (citing Defendants' Exhibits 113-1 and 113-2). As the Defendants explain it, "[t]hrough informal discovery, [Stephens] provided to these Defendants a listing of time spent working on th[is] case[.] [Stephens] now reports attorney time that has been increased from the actual time recorded at the time the work was completed[.]" *Id*. In other words, the Defendants are claiming that Stephens' counsel is fudging the numbers and consequently his fee award should be reduced "by $4,922.50" for "work performed before 2016 (3.5 years)[.]" *Id*. (The 3.5 years refers to the period from the inception of this case through December 2015.) As to fees incurred for the period from January through May 2016, the Defendants state that since Stephens "did not supplement [his] informal discovery with entries for time after [December 2015] . . . defendants cannot make a reasoned decision as to the reasonableness of the attorney time requested to be reimbursed." *Id*., p. 3. Still, argue the Defendants, "[i]t is reasonable to assume that [Stephens] has reviewed all of his counsel's time entries and made adjustments. . . . These Defendants believe that the court can reasonably make a downward adjustment of 14% of the 3.5 Year Adjustment, or $703.00." *Id*. Thus, the Defendants seek a reduction in the attorney fee in the amount of $5,625.50 ($4,922.50 for pre-2016 fees and $703.00 for the period from January through May of 2016).

Stephens maintains in his reply brief that the alleged "altered entries" the Defendants refer to are nothing more than a legitimate billing adjustment. Plaintiff's Reply, pp. 2-3. He claims the discrepancies in the two documents are the result of his efforts to compromise his attorney's fees to facilitate settlement, and that the exhibits submitted by the Defendants reflect those efforts (that is, the hours listed on the document that later became the Defendants' exhibit were lower because they were reduced to facilitate a settlement). *Id*. He also contends that the exhibits submitted by the Defendants–the ones that evidence the alleged "altered entries"–"should be stricken or disregarded as they are the product of confidential settlement communications, made pursuant to [Federal Rule of Evidence] 408, not 'informal discovery.'" *Id*., p. 3. So, the Defendants accuse Stephens and his counsel of altering time records in order to recover an unfairly high fee award, and Stephens retorts by accusing the Defendants of misrepresenting the contents of a document they should not have disclosed in the first place.

As to Stephens' argument that the Defendants' exhibits should be stricken or disregarded, the Court is not inclined to adopt either option. If in fact the Defendants received Stephens' counsel's fee summary during settlement negotiations then their use of the document now might very well violate (at least the spirit of) Rule 408, as Stephens argues. Rule 408 states in relevant part as follows:

> Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the

6

claim[.] . . .

Fed.R.Evid. 408.

However, the Rule 408 prohibition is not absolute. As one district court pointed out:

> Rule 408, however, has limits. First, as the last part of its text indicates, evidence regarding settlement negotiations is admissible if used for a purpose other than one of those expressly prohibited by the Rule. *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n*, 520 F.3d 109, 114 (2d Cir. 2008) ("The exception clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute.").

*Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F.Supp.2d 125, 129 (D.Conn. 2010). The court in *Master-Halco* noted the purpose of Rule 408:

> The Rule "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations." *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345, 351 (2d Cir. 2009). As Judge Weinstein has explained, "[t]he Rule is based on the policy of promoting the compromise and settlement of disputes," by taking into account "the reality that permitting the consideration of settlement offers as reflecting an admission of liability would discourage parties from discussing settlement or making settlement offers." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.02[1] (Joseph M. McLaughlin ed., 2d ed.).

*Id.*

The issue of whether the Defendants violated Rule 408 by submitting the fee summary as an exhibit, as well as the conjunctive issue of whether the document falls under the exemption to Rule 408 (for example, since it is before the Court only for purposes of determining a reasonable attorney fee award and not for purposes of challenging "the elements of the primary claim in dispute"), are nuances that need not be addressed now. The Court did review the Defendants' exhibit and did consider it, but only to the extent that it served to frame the Defendants' argument (i.e., Stephens' fee request should be reduced because it is not based on a fair or

7

accurate lodestar calculation). Also, the Defendants did not submit this document for purposes clearly prohibited by the rule, such as to unfairly influence a jury for example, which Rule 408 would obviously forbid. In other words, the dangers Rule 408 is designed to prevent are not present in the current dispute over fees and costs. For these reasons, the Court rejects Stephens' request to strike or disregard the Defendants' exhibits.

**A. Hourly billing rate.**

Stephens explains in his reply brief that during the course of this litigation his hourly billing rate was increased from $250 per hour, the rate he was charging when this case began, to $275 per hour, and he used the latter figure when he submitted his fee petition. Stephens argues that "a large number of . . . Supreme Court and Seventh Circuit cases have permitted use of current billing rates . . . ." since doing so "allows for the avoidance of complex interest calculations while still acknowledging the time value of money and the requisite reasonableness standard." *Id.*, p. 2 (citing *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 n. 5 (7th Cir. 1988)) ("The courts in this circuit generally use current rates.") (additional citations omitted). Finally, Stephens requests that "in the event the Court disagrees with the foregoing and elects to utilize the lower Lodestar rate, . . . Stephens respectfully requests interest be assessed and added to any ultimate award of attorney's fees and costs." *Id.*, p. 3.

Both Stephens and the Defendants cite and rely on the case of *Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) to support their positions with regard to the hourly rate issue. The Defendants say the case holds that attorney fee awards should be based on the hourly rate the plaintiff's attorney charged at the time work was done, not at a higher hourly rate that the attorney might be charging at the time a request for fees is made. Defendants' Response, p. 3. Stephens says that

the Defendants' interpretation of *Denius* "is simply false. While it is true the *Denius* court ultimately upheld the district court's refusal to accept the petitioner's current rate in its Lodestar calculation, it did so because of the contradicting and insufficient evidence offered in support." Plaintiff's Reply, p. 2. Stephens is correct that the Seventh Circuit in *Denius* found that the district court was within its discretion to award attorney's fees at a lower hourly rate based on the fact that the petitioner's evidence in support of his requested higher rate contained contradictions. But the *Denius* case does not, as the Defendants argue (or at least imply), prohibit an award based on a higher or current hourly rate, so long as that rate is reasonable and supported. As Stephens points out, in this case "there is no such contradiction or discrepancy nor do the Defendants contend the sought rate ($275.00) is inherently unreasonable." *Id*.

Stephens cites several cases to support his argument. In *Skelton*, for example, the Seventh Circuit noted as follows:

> The Third Circuit also allows an upward adjustment of the lodestar to compensate attorneys for the delay in payment, when litigation extends over several years, and for the quality of the representation. *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 583–84 (3d Cir. 1984). . . . This should be reflected in the lodestar in the form of a high hourly rate. Delay in payment may be compensated in either of two ways: (1) by using the attorneys' current rates (as the district court did here); or (2) by using historical rates plus a prime rate enhancement. The courts in this circuit generally use current rates.

*Skelton*, 860 F.2d at 255 n. 5. This Court addressed this same issue in the case of *Greenfield Mills, Inc. v. Carter*, and explained as follows:

> There appear to be two methods of adjusting the lodestar to account for a delay in payment. The district court may compensate for a delay in payment either by applying an attorney's current rates to all hours billed during the course of litigation, or by using attorney's historical rates and adding a prime rate enhancement. *See In re Washington Public Power Supply Sys. Secs. Litigation*, 19 F.3d 1291, 1305 (9th Cir. 1994); *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d

9

997, 1010 (9th Cir. 2002). This court has utilized the first of the two methods assuming a current hourly rate for [counsel] and adjusting upward to account for the delay in payment. *See* [*Trustees of Chicago Plastering Inst. Pension Trust v.*] *Cork Plastering, Inc.*, 2008 WL 728897, at *2 (N.D. Ill. Mar. 18, 2008) (holding that case law within the Seventh Circuit supports paying an attorneys' fees award at current billing rates).

*Greenfield Mills, Inc.*, 569 F.Supp.2d 737, 758 (N.D. Ind. 2008). More recently, another district court addressed this fee issue in *Young v. Verizon's Bell Atl. Cash Balance Plan*, noting that the use of "current hourly rates" in a lodestar calculation is an acceptable way to calculate an attorney fee award in a case that has spanned several years. The court explained as follows:

> Plaintiff also requests that the Court apply her lawyers' current hourly rates to the entire period back to 2006, as an adjustment for delay in payment. The Supreme Court has held that "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee." *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Trial courts may effect this adjustment by calculating the lodestar amount with "either current rates or past rates with interest." *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744–45 (7th Cir. 2003). This Court will apply current hourly rates to account for the delay in payment.

*Young*, 783 F.Supp.2d 1031, 1038 (N.D.Ill. 2011).

These cases make clear that Stephens is correct that a higher hourly rate is an acceptable rate to use in a lodestar calculation in cases such as this. Accordingly, the Defendants' objection to Stephens' counsel's use of an hourly rate of $275.00 to calculate his fee award is overruled.

### B. Number of hours billed.

That only resolves part of the matter, since the Defendants' challenge to Stephens' fee petition questions not only his hourly rate, but also the *number* of hours Stephens' counsel used to calculate his fee request. This discrepancy is illustrated by the differences in the fee summary Stephens gave to the Defendants (either during "informal discovery" or, as he says, as part of settlement negotiations), and the fee petition he filed of record. A few examples will make this

10

issue clear.

In his fee petition Stephens' counsel included two entries for June 1, 2012. Plaintiff's Exh. (DE 108-2), p. 1. The first entry is for 5.5 hours and includes the following notation: "cont research on relevant Stark/FCA provisions; pull records to pin down ownership issue and relationship between parties." *Id*. The second entry on that same date is for 8.5 hours and includes the following notation: "cont drafting Complaint and research on ACA/Stark issue; explore Rule (9) pleading requirements; conf w/SAH." *Id*. The fee summary Stephens gave to the Defendants earlier in this case also includes two entries for June 1, 2012, which include the same notations, but the hours assigned to those entries are 2.1 hours and 4.5 hours, which obviously is 7.4 hours less than what appears on Stephens' fee petition. Defendants' Exh. (DE 113-1), p. 1. Also in his fee petition, Stephens' counsel included four entries for work performed on May 15, 2015, totaling 3.8 hours. Plaintiff's Exh., p. 4. In the Defendants' exhibit, those same entries total 1.8 hours. Defendants' Exh., p. 5. All told, the Defendants list 10 individual entries they claim were inflated, for a total of 17.9 hours (which, at $275.00 per hour, totals $4,922.50, the amount the Defendants want deducted from counsel's fee request for pre-2016 fees).

Those examples make clear that Stephens' counsel not only calculated his attorney's fees using a higher hourly rate than he was charging when this case began, which is perfectly legitimate, but also apparently changed the *number* of hours he claims he worked on this case, at least as to certain dates. The Defendants do not accuse Stephens' counsel of anything untoward, at least not expressly, arguing simply that Stephens' fee petition "does not accurately reflect the time actually worked and reported at the time the work was done." Defendants' Response, p. 2. The Defendants then state that the discrepancies reveal that Stephens' counsel "reviewed his

history of billings and made adjustments not based on actual time spent, but instead on some unknown, unexplained and less reliable measure." *Id.*, p. 3. Stephens, however, insists that "if any alteration did occur, it was done to promote a resolution to the issue of attorney fees and overall settlement of the . . . case[.]" Plaintiff's Reply, p. 3.

The Court did some arithmetic to determine where things really stand. Litigation is expensive and so it is important for courts to help facilitate settlement, often by making sure the parties in a suit aren't jumping over dollars to argue about dimes. Unfortunately, to an extent, that is what is happening here.

Stephens asks for fees of $73,078.50 ($93,078.50 minus the $20,000.00 already paid by Defendant Dr. Arshad Malik). His formula for calculating that amount is 347.5 hours x $275/hr = $95,562.50 (but since some of those hours were billed at a lower rate of $137.50 the total ended up being $93,078.50). Stephens is also seeking supplemental fees of $6,215.00 (22.6 hours x $275/hr) for the period from May 13, 2016, when he prepared his fee petition, to August 8, 2016, the date he filed his supplemental petition. This totals $79,293.50, the total amount of attorney's fees Stephens' counsel is seeking. Adding expenses of $2,497.00 equals a total sum of $81,790.50, which is the total Stephens is seeking for fees, costs, and expenses.

Stephens' fee petition indicates his counsel spent approximately 80 hours on this case from January 13, 2016, up to and including May 13, 2016. Plaintiff's Exh., pp. 9-14. He also claims he worked on this case for a total of 347.5 hours from inception to May 13, 2016. Subtracting 80 hours from 347.5 hours equals 267.5 hours, which is the number of hours Stephens' counsel says he spent on this case in total from May 10, 2012 (the date he began billing) through December 2015. The Defendants argue that the fee summary they were given

totals only 232.2 hours of work for the same period. Defendants' Exh., p. 11. The Defendants argue that the fee award for the pre-2016 work should be $58,050.00 (232.2 hours x $250/hr). But since Stephens and his counsel are entitled to use an hourly rate of $275 to calculate attorney's fees, they would receive $63,855.00 if the Defendants' calculation of hours were accepted (232.2 hours x $275/hr). Again, Stephens is asking for $73,078.50 for the same time period, so now the parties are arguing over a difference of $9,223.50. That's a fair chunk of change, but whether it warrants months of litigation is questionable.

Finally, the Defendants contend that any award to Stephens for post-2015 fees, incurred during the period from January through May 2016 should be reduced by $703.00, or 14% of the $4,922.50 they argued should be deducted from the amount awarded for *pre*-2016 fees. Defendants' Response, p. 3. This is a curious argument, both mathematically and substantively. First of all, $703.00 is not 14% of $4,922.50 (that would be $689.15). Also, the Defendants do not explain how they arrived at the 14% figure, i.e., what its significance is. It would seem logical that the 14% would refer to the number of "altered entries" the Defendants claim appear in the fee petition, expressed as a percentage of the overall number of entries. In other words, if Stephens' attorney altered 14% of his billing entries for work done through the end of 2015, then the same percentage could be assumed to be altered in his 2016 entries. But if this were the case then it would seem that the Defendants should be asking for a 14% "across-the-board" reduction in counsel's 2016 fee request, rather than 14% of the reduction requested as to his pre-2016 fees. The total reduction the Defendants seek is $13,563.00 (*see* Plaintiff's Response, p. 4), which is darn close to 14% of the total amount Stephens is requesting (14% of $93,078.50 is $13,030.99), so perhaps that is where the 14% figure came from. But again, if that were the case, it would still

13

seem that the Defendants should be asking for a 14% across-the-board reduction of counsel's post-2015 fees, instead of 14% of $4,922.50. Be that as it may, an across-the-board reduction is not what the Defendants are asking for; they ask only for a reduction of $703.00 as to counsel's requested fees for the period from January through May 13, 2016.

The Defendants maintain that this $703.00 reduction will account for discrepancies (or altered entries, as they characterize them) that the Defendants *assume* must be present in counsel's 2016 billing entries since they were present in his pre-2016 entries. The Defendants state that Stephens "did not supplement [his] informal discovery" with billing records reflecting his hours worked on this case in 2016, but that nonetheless they "believe that the Court can reasonably make a downward adjustment of . . . $703.00." Defendants' Response, p. 3. So, the Defendants ask this Court to reduce Stephens' fee request based on their assumption that Stephens' counsel inflated his 2016 fees by $703.00 even though they have no evidence whatsoever to indicate that any of counsel's 2016 billing entries were "altered." They try to blame Stephens by stating that he did not supplement his "informal discovery" and so they are unable to point to specific altered entries, as they claimed to have done with the pre-2016 entries. The Defendants are trying to convince this Court that "[i]t is reasonable to assume" that Stephens altered his 2016 billing records and so the argument they employ as to the pre-2016 fees should apply equally to all fees claimed anytime *during* 2016.

The Defendants' objections to Stephens' fee petition are based on conclusory allegations, speculation, and assumptions. They fail to establish that the fees requested are unreasonable in any way that would warrant reducing them. Instead, they resort to a sort of "this doesn't look right, so reduce it so it's fair to us" argument, which is an insufficient basis for their objections.

What is really absurd is that the Defendants are asking the Court to reduce Stephen's counsel's fee request for January through May of 2016 by $703.00, while his petition requests nearly $22,000.00 for that time period (approximately 80 hours x $275/hr). *See* Plaintiff's Exhibit (DE 108-2), pp. 9-14. This is what the Court means by jumping over dollars to argue about dimes.

To sum up, the Defendants argue that Stephens' "fee request should be decreased by $5,625.50 [$4,922.50 for pre-2016 and $703.00 for January through May of 2016] because the time requested to be reimbursed is unreasonable and would compensate the relator for attorney time not actually spent on this case." Defendants' Response, p. 2. This argument is based on the discrepancies between the fee summary Stephens gave to the Defendants during settlement negotiations and the fee petition he filed with the Court.

In support of his fee petition, Stephens' counsel submitted his sworn declaration itemizing his fees (and also noting his experience and expertise in civil rights cases). Declaration of Travis W. Cohron (DE 108-1). He also submitted his detailed billing statement (DE 108-2). He explains in his briefs that the discrepancies between the fee summary he gave to the Defendants and the official, sworn fee petition he filed with the Court were the result of his attempts to compromise his fee amount in an attempt to settle this case. And, as Stephens points out, the claims in this case were settled–for the substantial sum of $2.5 million dollars. Plaintiff's Petition, p. 1. The Defendants' argument that Stephen's counsel's fee award should be reduced is based on a document they received earlier in this case (again, either during "informal discovery" or during settlement negotiations) that reflects a lower number of total hours worked on this case than does Stephen's filed fee petition. This argument has a visceral appeal at first given the discrepancies between the parties' respective exhibits. But a closer look reveals that the

Defendants' argument is based on assumptions and conclusions rather than actual evidence. They argue that the fee summary they received should be used for purposes of calculating a fee award, rather than the sworn, itemized billing records Stephens submitted with his petition. Stephens, on the other hand, argues that his fee petition is accurate and the fee summary on which the Defendants rely reflects a lower number of hours worked because it reflects Stephens' attempts to compromise a portion of his fee to facilitate the final settlement of this case. In other words, the Defendants urge the Court to award a reduced amount for fees because Stephens' fee petition doesn't pass a smell test. This argument would require the Court to *conclude* that Stephens' counsel's petition is inaccurate or inflated, but the Defendants' "evidence" is insufficient to support such a conclusion. *See, e.g.*, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 646 (7th Cir. 2011) ("A district court 'is entitled to determine the probative value of each [evidentiary] submission.' . . . We accord significant deference to the district court out of recognition that these disputes are essentially factual, that they do not need to be resolved in a uniform manner, and that we must avoid 'a second major litigation' over fees.").

The Defendants don't challenge the reasonableness of counsel's current hourly rate, instead arguing that since he charged $250 per hour at the beginning of this litigation he should be locked into that rate for the entire time. As discussed above, case law does not support this argument. As to the reasonableness of the total number of hours Stephens' counsel billed in this case, the Defendants argue that since their fee summary exhibit differs a bit from Stephens' sworn fee petition, the attorney fee award should be reduced, at least by a few thousand dollars, to make it more fair. But a court "may not cut down the requested fees by an arbitrary amount just because they seem excessive[,]" *Strange v. Monogram Credit Card Bank of Georgia*, 129

F.3d 943, 946 (7th Cir. 1997), which is what the Defendants' argument boils down to.

The Court concludes that Stephens' fee petition is reasonable in terms of hourly rate and total hours expended, and that the Defendants' arguments on both points fail to establish otherwise. For all of the foregoing reasons, the Defendants objections to Stephens' fee petition are overruled.

**II. Supplemental fee petition.**

As stated at the outset, Stephens filed a supplemental fee petition to recover fees he says were "incurred in preparing [filings] and litigating this matter since May 13, 2016." Supplemental Petition (DE 115), p. 2. By way of that petition he seeks an additional fee award of $6,215.00 (22.6 hours x $275.00/hr). The Defendants did not challenge this supplemental petition. The Court concludes that this supplemental fee request is reasonable both in terms of hourly rate and number of hours expended. From May 13, 2016, until August 8, 2016 (the date he filed his supplemental petition), Stephens litigated (and defeated) the Defendants' motion to strike his fee petition and then had to litigate the Defendants' current arguments in opposition to his petition. As Stephens notes correctly in his supplemental brief, "the law is clear that time spen[t] preparing the fee petition [is] fully compensable." Plaintiff's Memorandum in Support of Supplemental Petition (DE 116), p. 2 (citations omitted). *See Beattie v. Line Mountain Sch. Dist.*, 2014 WL 7183343, at *3 (M.D. Pa. Dec. 16, 2014) ("A party entitled to a fee award is also entitled to reimbursement for the time spent preparing the fee petition, often referred to as 'fees on fees.' *Walker v. Gruver*, 2013 WL 5947623, *17 (M.D.Pa. Nov.5, 2013) (citing *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978))." Accordingly, Stephens is entitled to recover attorney's fees in the amount of $6,215.00 for fees incurred in litigating his fee petition and

17

supplemental petition.

### III. Costs and expenses.

Stephens seeks to recover the sum of $2,497.00 for costs and expenses. He itemizes those expenses on the last page of his itemized fee statement. Plaintiff's Exhibit (DE 108-2), p. 14. The expenses include mostly mileage fees but also postage fees, copy fees, and filing fees. The Defendants do not challenge Stephens' request for expenses and the Court concludes that they are compensable and reasonable. Accordingly, Stephens is entitled to recover expenses in the amount of $2,497.00.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the Petition for Attorney Fees and Expenses (DE 107), GRANTS the Supplemental Petition for an Award of Attorney's Fees and Costs (DE 115), and awards the total sum $81,790.50. The Clerk of the Court is instructed to enter judgment in favor of Relator/Plaintiff Bradley Stephens, and against Defendants Afzal Malik and Prime Health Care Services, Inc., jointly and severally, in the amount of $81,790.50, plus interest, at the prevailing legal rate, from April 29, 2016, until judgment is paid in full.

Date: November 18, 2016.

                                                      /s/   William C. Lee
                                                      William C. Lee, Judge
                                                      United States District Court
                                                      Northern District of Indiana